United States District Court
Southern District of Texas
**ENTERED**
July 25, 2018
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| V. | § | CRIMINAL ACTION NO. H-12-774 |
| | § | CIVIL ACTION NO. H-16-2013 |
| LAWRENCE TYLER | § | |

## AMENDED[1] MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28 U.S.C. § 2255 is the Government's Response (Document No. 359) to Defendant/§ 2255 Movant Lawrence Tyler's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence (Document No. 340). Also pending are several other motions filed by Tyler: for a "Declaratory Judgment as to whether the Government h[as] the Right to Encumber, Seize and/or Dispose of Property" (Document Nos. 341 & 346); for a "Declaratory Judgment as to whether Lawrence T. Tyler is a U.S. Citizen and Whether he is Removable under 8 U.S.C. § 1101" (Document No. 342); a Motion for Nunc Pro Tunc (Document No. 349), and a "Motion under 18 U.S.C. § 3582(c)(2) based on Amendment of the United States Sentencing Guidelines" (Document No. 350). Having considered Tyler's § 2255 Motion to Vacate, Set Aside or Correct Sentence and the overlapping Motions for Declaratory Judgment (Document Nos. 341, 342, and 346), Tyler's Motion to Reduce his Sentence (Document No. 350), the Government's Response(s) to all of those motions, the record of the proceedings in the

---

[1] Following the filing of the Memorandum and Recommendation on April 12, 2018, Tyler advised the Court that he had not received copies of the affidavits that were filed by trial and appellate counsel. Based thereon, the Clerk was instructed to provide Tyler with copies of those affidavits and Tyler was given additional time to respond to those affidavits and file his objections to the Memorandum and Recommendation. This Amended Memorandum and Recommendation is entered to address the contents of Tyler's affidavit (Document No. 48-1 in Civil Action No. H-16-2013) and his newly filed Motion for an Evidentiary Hearing (Document No. 49).

underlying criminal case, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that the Movant's § 2255 Motion to Vacate, Set Aside or Correct Sentence and related Motions for Declaratory Judgment be DENIED, that his Motion for Nunc Pro Tunc and Motion for a Sentence Reduction under 18 U.S.C. § 3582 also both be DENIED, and that this § 2255 proceeding be DISMISSED with prejudice.

## I.       Introduction and Procedural History

Movant Lawrence Tyler ("Tyler"), who is currently in the custody of the United States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C. § 2255. This is Tyler's first motion pursuant to § 2255.

On December 12, 2012, Tyler was indicted for conspiracy to commit health care fraud, and health care fraud (Document No. 1). The Indictment was superseded three times, with the third Superseding Indictment alleging that Tyler engaged in a conspiracy to commit health care fraud (count one), eight substantive counts of health care fraud (counts two though nine), and money laundering (count ten). The Third Superseding Indictment also alleged that certain property was subject to forfeiture, including the real property located at 8330 Laurel Leaf Lane, Humble, Texas. Following six days of trial, and the dismissal of count three, a jury found Tyler guilty of counts one, two, four, five, six, seven, eight, nine and ten, and found facts that supported the forfeiture of the real property located at 8330 Laurel Leaf Lane. On August 22, 2014, after the preparation of a presentence investigation report, to which Tyler filed objections, Tyler was sentenced to 60 months confinement on count one, and 72 months confinement on remaining counts, with the terms of confinement to run concurrent, to be followed by a three year term of supervised release, and

restitution in the amount of $1,238,823.85 (Document No. 212).  A Judgment of Conviction was entered on August 29, 2014 (Document No. 214).  On September 28, 2015, the Fifth Circuit Court of Appeals affirmed Tyler's conviction, and the United States Supreme Court thereafter denied Tyler's petition for writ of certiorari.  Tyler's § 2255 motion, and his related/duplicative Motions for Declaratory Judgment followed.  Both trial and appellate counsel have filed affidavits responding to Tyler's claims of ineffectiveness (sealed Documents Nos. 38 & 39), to which Tyler has not filed a "controverting" affidavit (Document No. 48-1).

## II.    Claims

In his § 2255 Motion, Tyler raises six claims:

1.    that the District Court erred in failing to submit a special verdict  form to the jury on the amount of loss;

2.    that he had no ownership interest in the property located at 8330 Laurel Leaf Lane, and therefore there was no basis for the Government to encumber, seize or forfeit it;

3.    that he cannot, and should not, be deported given that his conviction(s) are not for an aggravated felony;

4.    that his sentence should be reduced pursuant to 18 U.S.C. § 3582(c)(2) based on recent amendments to the sentencing guidelines;

5.    that his trial counsel, Richard Kuniansky, was ineffective for: failing to request that the Court submit a special verdict form to the jury;  failing to object to or argue against the order of restitution; failing to argue against or object to the sentence enhancements, the term of supervised release, and the restitution payment schedule; and failing to investigate the search warrant; and

6.    that his appellate counsel, Yolanda Jarmon, was ineffective for refusing to raise sentencing issues on appeal.

Those claims are also included in Tyler's Motions for Declaratory Judgment (Document Nos. 341,

3

342 and 346) and his Motion to Reduce Sentence (Document No. 350).  As for his Motion for Judgment Nunc Pro Tunc, Tyler complains, somewhat overlappingly, about the restitution payment schedule, the loss amount from which his sentence was calculated, and the fact that the money posted for his bond has not been returned.

For the reasons set forth by the Government, and discussed in detail below, no relief is available to Tyler on any of his claims or any of his pending, post-conviction motions.

## III.    Discussion

Pursuant to 28 U.S.C. § 2255, a federal prisoner may challenge his conviction on the basis that his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." Motions brought pursuant to § 2255 are reserved for claims of constitutional or jurisdictional significance. *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981); *Limon-Gonzalez v. United States*, 499 F.2d 936, 937 (5th Cir. 1974).

### A.    Special Verdict Form and Forfeiture Claims

In his first claim contained in his § 2255 motion, Tyler complains that a special verdict form should have been submitted to the jury on the amount of loss.  Somewhat related to that claim, Tyler maintains in part of his Motion for Judgment Nunc Pro Tunc that the loss amount should have been "zero."   In addition, in his second claim in his § 2255 motion, and in two of his Motions for Declaratory Judgment, Tyler complains about the seizure and forfeiture of the property at 8330 Laurel Leaf Lane, arguing that because he had no ownership interest in that property it was not

4

subject to forfeiture.  The Government argues that these claims are procedurally barred from post-conviction review because Tyler did not raise the claims in his direct appeal, and cannot establish cause and prejudice for his failure to do so.   The Government alternatively argues that the claims fail on the merits.   The Magistrate Judge agrees that these claims are procedurally barred.  The Magistrate Judge additionally concludes that none of these claims have any substantive merit.

When claims of constitutional or jurisdictional import are not raised on direct appeal, the claims are procedurally defaulted and can only be considered in a § 2255 proceeding if a movant can show cause for his failure to raise his claims on appeal, and actual prejudice resulting from the alleged errors.  *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996) ("[A] defendant who raises a constitutional or jurisdictional issue for the first time on collateral review must show both cause for his procedural default and actual prejudice due to any such errors."); *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) ("When raising issues of jurisdictional or constitutional magnitude for the first time on collateral review, a defendant ordinarily must show both cause for his procedural default and actual prejudice resulting from the error."); *United States v. Acklen*, 47 F.3d 739, 741-42 (5th Cir. 1995) ("Because a challenge under section 2255 'may not do service for an appeal,' a movant may not raise constitutional or jurisdictional issues for the first time on collateral review without establishing both 'cause' for his procedural default and 'actual prejudice' resulting from the error."); *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991) ("A defendant can challenge his conviction after it is presumed final only on issues of constitutional or jurisdictional magnitude . . . and may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error."), *cert. denied*, 502 U.S. 1076 (1992).  Alternatively, procedurally defaulted claims can be considered

for the first time in a § 2255 proceeding if the movant can show that he is actually innocent. *Bousley*

*v. United States*, 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally defaulted a claim

by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first

demonstrate either 'cause' and actual 'prejudice' . . . or that he is 'actually innocent.'").

Here, the only issue raised on appeal was a sufficiency of the evidence claim. Consequently,

Tyler's complaints about the absence of a special verdict form on the amount of loss, and his

complaint that the property located at 8330 Laurel Leaf Lane was not subject to forfeiture were not

raised on direct appeal and are procedurally barred from review in this post-conviction proceeding

unless Tyler can show cause and prejudice for his failure to raise the claims on appeal, or can make

an appreciable showing of actual innocence. Given the evidence offered against him at trial, the

Fifth Circuit Court of Appeals' decision finding sufficient evidence to support Tyler's convictions,

*United States v. Tyler*, No. 14-20546 (5th Cir. Sept. 28, 2015) (Document No. 338)[2], and the absence

_____

[2] In the Opinion affirming Tyler's conviction, the Fifth Circuit recited, as follows, the evidence that supported Tyler's health care conspiracy and health care fraud convictions:
> . . . . At trial, one of Tyler's co-conspirators, Birdie Revis, testified that he would send out marketers to find Medicare patients and use the patients' information to fill out blank physician certification statements pre-signed by his cousin, Dr. John Edward Perry. Revis testified that he sold these statements to Tyler, who paid him $500 per patient in cash or Western Union money orders. Revis further testified that he arranged for Dr. Perry and Tyler to have a telephone conversation, after which Dr. Perry assured Revis that "[e]verything [was] ok," and Tyler told Revis that he would accept any prescriptions sent by Dr. Perry.
>
> The Government presented evidence related to seven patients on whose behalf Tyler submitted fraudulent claims. The Government offered Medicare or Medicaid claims filed by ICPAYDAY naming each of these seven patients and indicating that the patient was provided with various types of durable medical equipment. Testimony established that these patients had either never heard of ICPAYDAY, had never received the equipment shown on the Medicare or Medicaid forms, or had never seen Dr. Perry, the prescribing doctor listed on the claim forms.
>
> Mark Porter, a health insurance specialist for the Centers for Medicare and Medicaid Services, testified that when he conducted an ad hoc site inspection of

of any new evidence that would call into question either the jury's verdict or the Court of Appeals'

sufficiency of the evidence determination, Tyler cannot overcome the procedural bar through a claim

of actual innocence.   Tyler does not, in fact, attempt to do so, but argues, instead, that there is

"cause" for the failure to raise these claims in his direct appeal – his appellate counsel's

---

> ICPAYDAY's office, Tyler was not present and the employee at the office did not
> have access to the locked room that contained patient files and other documentation.
> Porter also testified that although he expected to see rigid orthotic products based on
> what ICPAYDAY had been billing to Medicare, he found only neoprene orthotics in
> the office.  He requested that Tyler fax him certain documentation.
>
> Hervee Kpi, a manager at KC International, testified that a few days after
> Porter visited ICPAYDAY's office, Tyler had a private meeting with Okarocha, the
> owner of KC International.  Kpi testified that after the meeting, Okarocha asked Kpi
> to create new KP International invoices for Tyler, and that she did so under
> Okarocha's direction.  Several days later, Tyler asked Kpi to create another set of
> invoices because Tyler was not satisfied with the price of each item that was put on
> the prior invoices and also wanted to change the quantity of items reflected on them.
> Kpi testified that Tyler sat next to her while she created the new invoices, listing
> items that were never purchased.  ICPAYDAY faxed the claims to Porter in
> connection with the Medicare claims under investigation.  Another Medicare
> investigator testified that when she reviewed the KC International invoices, she
> noticed that ICPAYDAY's bank accounts did not show corresponding payments for
> each of the invoices.
>
> Tyler contends that he lacked the necessary mens rea for these convictions
> because a third party did his billing and he relied on doctors, like Dr. Perry, to
> determine whether equipment was medically necessary.  However, the evidence
> presented at trial, including the testimony of Revis and Kpi, supports the jury's
> conclusion that Tyler knowingly conspired with Okarocha to submit fraudulent
> claims to Medicare and Medicaid and willfully and purposely participated in the
> scheme.  To the extent Tyler argues that there is conflicting evidence, such as his
> own testimony, that supports his claim that he lacked the requisite mens rea for
> conspiracy and health care fraud, the jury was free to believe other witnesses over
> him.  *United States v. DeRose Indus., Inc.*, 519 F.2d 1066, 1067 (5th Cir. 1975); *see
> also Grant*, 683 F.3d at 642 ("The jury retains the sole authority to weigh any
> conflicting evidence and to evaluate the credibility of the witnesses.").  Thus, we
> reject Tyler's sufficiency-of-the-evidence challenge to his convictions for health care
> fraud and conspiracy to commit health care fraud.

*Tyler*, at 4-6.

ineffectiveness. According to Tyler, he urged his appellate counsel to raise these issues/claims and even attempted to raise them himself in a *pro se* supplemental brief, which the Fifth Circuit did not allow or consider.

Appellate counsel's failure to raise an issue on appeal may suffice as "cause" for a procedural default if it can be shown that counsel was "ineffective" for failing to raise the claim. *Murray v. Carrier*, 477 U.S. 478, 488 (1986) ("Ineffective assistance of counsel, then, is cause for a procedural default"). Here, for the reasons discussed more fully below, Tyler cannot establish "cause" and "prejudice" to overcome the procedural default of his first two claims. First, neither claim has any substantive merit. Second, appellate counsel was not ineffective for failing to raise those claims on appeal.

Tyler's complaints about the absence of a special verdict form on the amount of loss misapprehends the law relative to the sentencing issues that a jury can, or should, decide. In *United States v. Collins*, 774 F.3d 256, 265-66 (5th Cir. 2014), the Fifth Circuit made it clear that the types of complaints Tyler raises apply only when a defendant's sentence is increased above the statutory maximum (*Apprendi/Alleyne* "require proof beyond a reasonable doubt of a fact that increases the statutory minimum or maximum sentence. They do not apply to Guidelines calculations that, as in this case, fall within the statutory range."). Here, because Tyler was sentenced within the statutory range, the District Court properly determined the loss amounts, and used those loss calculations to determine his guideline sentencing range. *See United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005) ("*Booker* contemplates that, with the mandatory use of the Guidelines excised, the Sixth Amendment will not impede a sentencing judge from finding all facts relevant to sentencing. The sentencing judge is entitled to find by a preponderance of the evidence all the facts relevant to the

determination of a Guideline sentencing range and all facts relevant to the determination of a non-Guidelines sentence.") (citations omitted). There was, therefore, no need for a special verdict form on the amount of loss and the District Court did not err in not submitting one. Tyler's claim in his § 2255 motion about the absence of a special verdict form on the amount of loss is, accordingly, subject to dismissal as both procedurally barred from review, and as without any substantive merit.

As for Tyler's claims that the property at 8330 Laurel Leaf Lane was not subject to forfeiture because he had no ownership interest in that property, that claim fails for three reasons. First, to the extent Tyler claims that he had no interest in the property, that alleged lack of an ownership interest would render him without standing to challenge the forfeiture of the property. *See United States v. $38,570 U.S. Currency*, 950 F.2d 1108, 1112 (5th Cir. 1992) ("the claimant must come forth with some evidence of his ownership interest in order to establish standing to contest a forfeiture"). Second, the jury found the following specific facts that supported the forfeiture of the property:

- "that the $140,500 involved in Count Ten [money laundering count] was traceable toward the purchase of the real property located at 8330 Laurel Leaf Lane, Humble, Texas"; and

- "that additional proceeds derived from the health care fraud conspiracy (as charged in count 1) or the health care fraud scheme (as charged in counts 2 and 4-9)" in the amount of $31,469.67, "were expended toward the purchase and/or permanent improvement of the real property located at 8330 Laurel Leaf Lane, Humble, Texas.

Special Verdict Form on Forfeiture (Document No. 181) at 6 and 7. Notwithstanding the fact that the time to dispute those factual findings was on appeal, Tyler does not come forth with any evidence in this § 2255 proceeding that would call into question those factual findings. Third, Tyler's challenge to the forfeiture of the property is not a proper claim in a § 2255 proceeding because it has no bearing on Tyler's custody status. *United States v. Segler*, 37 F.3d 1131, 1136-37 (5th Cir. 1994)

9

(limiting cognizable claims in a § 2255 proceeding to those that have an effect on a defendant's custody). Tyler's claim in his § 2255 Motion, and his Motion for Declaratory Judgment challenging the forfeiture of the Property located at 8330 Laurel Leaf Lane, is therefore subject to dismissal as both procedurally barred, without any substantive merit, and not cognizable in a post-conviction § 2255 proceeding.

As for Tyler's complaints in several of his filings, including his Motion for Judgment Nunc Pro Tunc, that he should have been sentenced based on a loss of amount of "zero," as is reflected in the Judgment, and that based on that loss amount there should not have been any amount of restitution due, Tyler misconstrues what the "zero" determination in the Judgment means. The Judgment that was entered on August 29, 2014, has on page 6 a "Total Loss" amount of "$0.00." Judgment (Document No. 214) at 6. That "Total Loss" amount, however, was prefaced on the following information provided in an asterisk, that stated, "Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996." Given that the "Total Loss" amount was prefaced on a requirement that did not apply to Tyler, the "$0.00" is not indicative of the amount of loss, which was established at sentencing, and from which Tyler's advisory sentence was calculated under the Guidelines.[3] There is, therefore, no basis for a modification of the Judgment, no basis for a modification of Tyler's sentence based on the "Total Loss" provision on page 6 of the Judgment, and no basis for a modification of the restitution amount. Tyler's complaint in his Motion Nunc Pro

---

[3] The amount of intended loss calculated in the presentence investigation report and adopted by the District Court at sentencing was $2,458,144.32. Of that amount, restitution in the amount of $1,238,823.85, which represented the amount(s) actually paid by Medicare and Medicaid, was ordered.

Tunc about the loss amount is, therefore, also subject to dismissal.

**B.      Immigration Status and Payment Schedule Claims**

In his third claim in his § 2255 motion, and in one of his Motions for Declaratory Judgment, Tyler maintains that he is not deportable or removable given that his conviction in this case is not one for an "aggravated felony."  Tyler also complains, in his Motion for Judgment Nunc Pro Tunc, about the payment schedule for his restitution.  As argued by the Government, neither of those claims are cognizable in a § 2255 proceeding, or any other post-conviction proceeding related to Tyler's underlying criminal conviction.

Whether a person is removable or deportable is to be first determined at the administrative level, through Immigration and Customs Enforcement.  *See* 8 U.S.C. § 1252 ("Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.").  Once a determination on removability or deportability is made, any challenge to an order of removal/deportation must be pursued administratively, through the immigration courts.  It is only when those administrative appeals have been exhausted that the issue may be raised in the appropriate court of appeals.  8 U.S.C. § 1252(a)(5), (b)(9), (d)(1); *Roy v. Ashcroft*, 389 F.3d 132, 137 (5th Cir. 2004) ("Judicial review of a final order of removal is available only where the applicant has exhausted all administrative remedies of right."); *Roberts v. INS*, 372 F.App'x 921, 925 (11th Cir. 2010) (administrative exhaustion is required before the Court of appeals can consider a challenge to an

11

order of removability).

Here, Tyler has not been determined to be removable or deportable at the administrative level. His attempt, in this case, to pre-empt any possible, future adverse immigration consequences associated with his conviction is premature, not cognizable prior to his exhaustion of his administrative remedies, and not cognizable, in any event, in a post-conviction § 2255 proceeding or in a Motion for Declaratory Judgment. *See Mejia v. Gonzales*, No. 1:10-cv-00910-LJO-DLB, 2010 WL 2573995 ("there is no support for the proposition that the Court has jurisdiction to review Immigration and Customs Enforcement Agency's alleged future conduct. It is the ICE, and not this Court, which must determine whether the Petitioner in this case is deportable or removable."); *Roberts*, 372 F.App'x at 925 ("because it is clear on the face of Roberts' complaint that immigration proceedings had not yet begun, the district court did not err in dismissing without prejudice any declaratory judgment action"). As such, that claim, raised by Tyler in his § 2255 motion, and in a motion for declaratory judgment, is subject to dismissal.

In addition, Tyler's complaints about a restitution payment schedule are not proper grounds for either a § 2255 motion, or a motion seeking a modification of the judgment. Such complaints, at their most generic, must first be made at administrative level with the Bureau of Prisons, and then in a § 2241 petition filed in the District of confinement. *United States v. Diggs*, 578 F.3d 318, 319 (5th Cir. 2009). Tyler has not exhausted his administrative remedies with respect to this claim, and he is not incarcerated in this District. As such, as argued by the Government, his generic complaints about any restitution payment schedule are not cognizable in this case. As for Tyler's complaints

12

that the Schedule of Payments in the Judgment[4] are unconstitutional because they are an impermissible garnishment on his future wages, again, such a claim should have been raised by Tyler in his direct appeal. In addition, notwithstanding Tyler's procedural default of such a claim, that claim cannot be pursued with a § 2255 motion or a § 2241 petition, *see Campbell v. United States*, 330 F. App'x 482, 482–83 (5th Cir. 2009) ("A challenge to the restitution or fine portion of a sentence is a nonconstitutional issue relative to sentencing that should be raised on direct appeal and not for the first time in a § 2255 proceeding.  A district court lacks jurisdiction to modify a restitution order under § 2255, a writ of coram nobis, or "any other federal law.") (internal citations omitted), or with a Motion for Judgment Nunc Pro Tunc given the absence of a showing of a mistake in the Judgment that would warrant a Judgment Nunc Pro Tunc.  Instead, to the extent Tyler believes that his financial circumstances would warrant a change in the payment schedule, he can seek a modification of the restitution payment schedule pursuant to 18 U.S.C. § 3664(k).  Consequently, in the current context in which Tyler has brought his complaints about the restitution payment schedule, those complaints are subject to dismissal as unexhausted, procedurally barred from review, and not cognizable.

### C.   Claim for Sentence Reduction

In claim four in his § 2255 motion, and in his separate Motion to Reduce his Sentence, Tyler

---

[4] Pursuant to the Judgment of Conviction, a lump sum payment of $900.00 was due immediately, with the balance to be paid as follows:
> Balance due in payments of the greater of $25 per quarter or 50% of any wages earned while in prison in accordance with the Bureau of Prisons' Inmate Financial Responsibility Program.  Any balance remaining after release from imprisonment shall be paid in monthly installments of $1,000 or 10% of gross earnings, whichever is greater, to commence 60 days after the date of release to a term of supervision.

Judgment (Document No. 214) at 7.

13

contends that he should be afforded the benefit of Amendment 792 of the 2015 amendments to the

Sentencing Guidelines, which amended the commentary to § 2B1.1 of the Sentencing Guidelines.

According to Tyler, that amendment, which is clarifying, should be applied retroactively to result

in a re-calculated intended loss of $0.00, which would warrant a reduction in his sentence.

> Under 18 U.S.C. § 3582(c)(2), the Court may modify a term of imprisonment:
>
> in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has been subsequently lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(c), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion . . . after considering the factors set forth in section 3553(a) to the extent they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Correspondingly, under § 1B1.10(d) of the Sentencing Guidelines, the amendments to the Guidelines

which would justify a reduction of a defendant's sentence under § 3582(c)(2) are Amendments "126,

130, 156, 176, 269, 329, 341, 371, 379, 380, 43, 454, 461, 484, 488, 490, 499, 505, 506, 516, 591,

599, 606, 657, 702, 706 as amended by 711, 715, 750 (parts A and C only), and 782 (subject to

subsection (e)(1))."  Amendment 792, which added language to § 2B1.1(b)(10)(C) and modified

provision 3(A)(ii) of the application note commentary to § 2B1.1, was not included in the

amendments determined to justify a reduction in a defendant's sentence under § 3582(c)(2).  *See*

Application No. 1 to § 1B1.10 ("Eligibility for consideration under 18 U.S.C. § 3582(c)(2) is

triggered only by an amendment listed in subsection (d) that lowers the applicable guideline range").

Because Amendment 792 is not listed in § 1B1.10 of the Sentencing Guidelines, and has not

otherwise been determined to warrant a sentence modification under § 3582(c)(2), *see Fofanah v.*

*United States*, No. 15Civ.6538, 2017 WL 4564922 (S.D.N.Y. Oct. 11, 2017); *United States v. Sunny*

*Robinson*, Criminal Action No. 09-422-1, Order on Defendant's Motion for Modification of

14

Sentence (Document No. 318) (S.D. Tex. Sept. 28, 2017), Tyler is not entitled to a reduction of his sentence under § 3852(c)(2).[5]  Tyler's fourth § 2255 claim, and his separate Motion for Sentence Reduction, should be denied and dismissed.

### D.  Ineffective Assistance of Counsel Claims

In claims five and six of his § 2255 motion, Tyler complains about the performance of his trial and appellate counsel.  According to Tyler, trial counsel was ineffective for: (1) failing to object to the improper sentence; (2) failing to present a defense; (3) failing to request a special verdict; (4) failing to investigate the search warrant and supporting affidavit; and (5) failing to call crucial witnesses including the lead investigator, John Moody.  Appellate counsel, Tyler contends, was ineffective for failing to communicate with him about the appeal, and failing to brief the non-frivolous issues he wanted to raise on appeal.

Claims of ineffective assistance of trial counsel are generally measured by the standards of *Strickland v. Washington*, 466 U.S. 668 (1984).  To be entitled to relief on an ineffective assistance of counsel claim, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. *Id*. at 687.  Deficiency is

---

[5] Tyler initially mentioned amendment 791 in his § 2255 Motion and his Motion to Reduce Sentence, but referenced the text of Amendment 792 and later acknowledged in his Response to the Government's Response that he may have mistakenly referenced amendment 791.  Tyler's Response (Document No. 371) at 26.  Notwithstanding that apparent mistaken reference to amendment 791, Tyler additionally is not entitled to retroactive application of amendment 791 for two reasons.  First, amendment 791 is not listed in § 1B1.10(d) of the Guidelines as an amendment that would justify a sentence modification under § 3582(c)(2).  Second, while amendment 791 changed the table for offense level increases based on loss amounts, those changes would not have affected Tyler's sentence calculation.  The intended loss, calculated in the presentence investigation report and adopted by the District Court, was $2,458,144.32.  Amendment 791 changed the loss amount for a sixteen (16) point increase in the offense level from $1,000,000 to $1,500,000, a change which would not have benefitted Tyler at sentencing.

judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id.* at 687-689. The prejudice element requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A petitioner has the burden to prove both the deficiency and the prejudice prongs in order to be entitled to relief. *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

Under *Strickland*, judicial scrutiny of counsel's performance is highly deferential and a strong presumption is made that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing *Strickland*), *cert. denied*, 509 U.S. 921 (1993). In order to overcome the presumption of competency, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Under the prejudice prong of *Strickland*, a petitioner must be able to establish that absent his counsel's deficient performance the result of his trial would have been different, "and that counsel's errors were so serious that they rendered the proceedings unfair or the result unreliable." *Chavez*, 193 F.3d at 378. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel. The determination whether counsel has rendered reasonably effective assistance turns on the totality of facts in the entire record. Each case is judged in the light of the number, nature, and seriousness of the charges against a defendant, the strength of the case against him, and the strength and complexity

of his possible defense. *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983), *cert. denied*, 467 U.S. 1220 (1984). The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct. *Strickland*, 466 U.S. at 690-691. Counsel will not be judged ineffective only by hindsight.

Claims of ineffective assistance of appellate counsel are generally assessed under the same two part *Strickland* deficiency and prejudice standard as claims of ineffective assistance of trial counsel. *Williams v. Collins*, 16 F.3d 626, 635 (5th Cir.), *cert. denied*, 512 U.S. 1289 (1994). With respect to *Strickland's* deficiency prong, "[o]n appeal, effective assistance of counsel does not mean counsel who will raise every nonfrivolous ground of appeal available." *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998), *cert. denied*, 525 U.S. 1174 (1999); *see also Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir.) ("The Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal."), *cert. denied*, 493 U.S. 970 (1989). Rather, "[a]ppellate counsel is obligated to only raise and brief those issues that are believed to have the best chance of success." *Rose v. Johnson*, 141 F.Supp.2d 661, 704-705 (S.D. Tex. 2001). "It is not only reasonable but effective for counsel on appeal to winnow out weaker arguments and focus on a few key issues." *Mayo v. Lynaugh*, 882 F.2d 134, 139 (5th Cir. 1989), *modified on other grounds*, 893 F.2d 683 (5th Cir. 1990), *cert. denied*, 502 U.S. 898 (1991). "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985) (cited with approval in *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).

As for *Strickland's* prejudice prong, in the context of an ineffective assistance of appellate counsel claim, "[p]rejudice results if the attorney's deficient performance would likely render either

17

the defendant's trial fundamentally unfair or the conviction and sentence unreliable." *United States v. Dovalina*, 262 F.3d 472, 474 (5th Cir. 2001). When the claim of ineffective assistance of appellate counsel is based on counsel's failure to raise a claim or issue on appeal, prejudice is established if it is shown "that the appeal would have had, with reasonable probability, a different outcome if the attorney adequately addressed the issue" and "that the attorney's deficient performance led to a fundamentally unfair and unreliable result." *Id.* at 474-75.

Here, based on the contents of the affidavits filed by trial counsel, Richard Kuniansky, and appellate counsel, Yolanda Jarmon, as well as the contents of Tyler's own affidavit (Document No. 48-1 in Civil Action No. H-16-2013), the Magistrate Judge concludes that no relief is available to Tyler on the merits of his ineffectiveness claims.

### 1.    Trial Counsel

Tyler faults trial counsel for failing to object to the improper sentence; failing to present a defense; failing to request a special verdict; failing to investigate the search warrant and supporting affidavit; and failing to call crucial witnesses including the lead investigator, John Moody. Trial counsel, Richard Kuniansky, responded in an affidavit to each of these complaints. While Tyler has responded to much of Kuniasky's affidavit, he focuses in his own affidavit on trial counsel's failure to call a handwriting expert. More specifically, Tyler maintains that he arranged for friends and family to supply funds for Kuniansky to hire a handwriting expert, but that Kuniansky did not pay that expert to testify at trial. Tyler further states in his affidavit that he spoke with the handwriting expert (Curt Boggett) some days before trial and was informed by him that he would not be coming to Houston for trial because he had not been paid by Kuniansky to do so. Tyler believes that the contents of his own affidavit in this regard conflict with the statements of Kuniansky in his affidavit,

thereby warranting an evidentiary hearing on his ineffectiveness claims.

To the extent Tyler complains in his § 2255 motion about Kuniasnky's failure to object to the improper sentence and failure to request a special verdict, no relief is available on the merits of those claims. As set forth above and reflected in the record, Tyler's sentence was not improper, Kuniansky having lodged reasonable objections to the presented investigation report, and Tyler was not entitled to a special verdict form on the amount of loss. As for Tyler's complaint about Kuniansky's failure to investigate and challenge the search warrant, Kuniansky states in his affidavit, and Tyler does not deny, that there was no search warrant. There was therefore, no search warrant for Kuniansky to investigate. As for Tyler's complaint that Kuniasky failed to present a defense, the record shows that Kuniansky pursued a defense, based on Tyler's trial testimony, that he had no knowledge of any improper coding or billing. The fact that the jury did not believe Tyler and his defense has not been shown to be attributable, in any way, to counsel's performance.

With respect to Tyler's complaints about Kuniansky's failure to call crucial witnesses, it is here that the contents of Tyler's affidavit require further discussion of Tyler's ineffectiveness claim. Tyler maintains that Kuniansky should have called as witnesses a coding expert, a handwriting expert, the delivery drivers who delivered the goods that were alleged to have been fraudulently billed to Medicare, and John Moody, one of the investigators. Kuniansky addressed in his affidavit, as follows, each of Tyler's complaints about the "crucial" missing witnesses:

> 10.     Regarding the failure to call crucial witness John Moody who was arrested and pled guilty to solicitation of prostitution, John Moody was an early investigator in this case. He was arrested for solicitation of prostitution and either suspended or terminated, A new investigator was assigned the case. For obvious reasons, the government had no intention of calling Mr. Moody to the stand. Mr. Tyler wanted me to call Mr. Moody to the stand for the sole purpose of establishing he had been arrested for solicitation of prostitution. I did a Harris County records search for John

Moody.  It showed that on November 21, 2013, he received deferred adjudication for the Class B misdemeanor of solicitation of prostitution.  My file also shows legal research on whether this deferred adjudication was admissible under Federal Rule of Evidence 609 should the government call him as a witness.  My file contains the Fifth Circuit case of United States v. Valentine, 401 F.3d 609 (5th Cir. 2005) holding that a Texas "deferred adjudication" does not subject a witness to impeachment with the use of a prior "conviction."  Moreover, if I recall correctly, this matter was raised before Judge Werlein, who ruled against me calling him to the stand for such a purpose (although the record will obviously speak for itself).

11.     Regarding the allegation I was paid for a handwriting expert, failed to call him to the stand and when asked how the money was spent I gave Mr. Tyler no reply, I distinctly recall a strategic decision not to call the handwriting expert to the stand.  Although the handwriting expert was prepared to testify several critical documents had not been signed by Mr. Tyler or the patients, he was also prepared to testify several were.  I did not think it aided the defense to call a witness to the stand to testify that Mr. Tyler was only "a little bit pregnant."

Regarding the allegation of a failure to account for funds, Defendant Tyler was not happy with Judge Werlein's decision to limit his private investigator fees and advised me he has friends/family who could come up with a few thousand additional dollars for private investigative services and a handwriting expert.  My IOLTA account records show that on April 3, 2014, I received $3,000 from Mr. Tyler and on April 10, 2014, I received an additional $4,000 from Mr. Tyler.  My IOLTA account records show that on May 2, 2014, I wrote a check to Mr. Baggett, a handwriting expert, for $1,200.  On June 2, 2014, I wrote a check to private investigator Kimmons for $1,984.76.  On June 5, 2014, I wrote an additional check to Mr. Baggett for $2,300.  This left a balance in my IOLTA account of $1,515.24.  Defendant Tyler requested that I remit the balance to who he represented to be a relative of his, Connie Sloneker.  On June 5, 2014, I wrote a check to Ms. Sloneker for the remaining balance of $1,515.24.  This zeroed out my IOLTA account for Mr. Tyler.  It is difficult to comprehend how he can complain I either misappropriated monies or failed to account for them.

\* \* \*

13.     Regarding the failure to call delivery drivers to the stand notwithstanding repeated requests, and the fact that one was in the lobby of the courthouse, if I recall correctly, one of the allegations against Mr. Tyler was that he billed Medicare for very expensive orthotics and provided the patients with cheap Ace bandages that could be purchased from Target.  I don't [sic] present in Court, speaking the witness, and making a decision not to call the witness because they could provide no testimony helpful to the defense.

14.     Regarding the failure to call a coding expert to the stand, both me and my legal assistant Richard Bramer made extensive efforts to find a coding expert that was willing to testify for the defense. We were incapable of finding one. Moreover, even if we had located one, they would not have testified that Ace bandages should be coded as expensive orthotics.

Affidavit of Richard Kuniansky (sealed Document No. 38). Against these statements in Kuniansky's

affidavit are the statements in Tyler's affidavit about the missing witnesses, including his statements

that the handwriting expert was not called as a witness solely because he had not been paid by

Kuniansky, that Kuniansky never mentioned that it was a strategic decision to not call the

handwriting expert,  and that Tyler had no Ace bandages in his inventory and his delivery drivers

could have testified about the products they delivered for Tyler.  (Document No. 48-1 at 6, 7

("Shortly before trial I spoke with the Handwriting Expert, Mr. Curt Baggett, and he informed me,

much to my dismay, that he will not be coming to Houston, Texas for my trial simply because he was

never paid by Mr. Kuniansky . . . I spoke with Mr. Kuniansky shortly before the trial and reminded

him that the Handwriting expert needed his payment before he will make travel arrangements.  Mr.

Kuniansky's response to my reminder was that he had already mailed the handwriting expert

payment. There was no mention of "[ . . . ] a strategic decision not to call the handwriting expert to

the stand." ); Document No. 48-1 at 11 ("Mr. Kuniansky's statement that 'the allegations against Mr.

Tyler was that he billed Medicare for very expensive orthotics and provided the patients with cheap

Ace bandages that could be purchased from Target.' is slanderous and misleading.  None of my

inventory consist of Ace bandages.").

None of the statements in Tyler's affidavit provide a basis for a finding that Kuniansky was

ineffective.  In addition, none of the statements in Tyler's affidavit conflict with the statements in

Kuniansky's affidavit in such a way that an evidentiary hearing is needed.[6]  Kuniansky states that

he did not call a handwriting expert as a witness because the witness could not testify in a manner

that would have exculpated Tyler or furthered the defense.  Kuniansky states essentially the same

thing about the delivery driver witnesses Tyler believes he should have called to testify.  Nothing in

Tyler's affidavit calls into question that assessment by Kuniansky.  In particular, while Tyler does

state that he spoke with the handwriting expert before trial, there is nothing in his affidavit about the

substance of the testimony the handwriting expert could, or would, provide.  The same is true of the

delivery drivers.  In the absence of clear evidence that there were witnesses who were willing to

testify favorably for the defense, Tyler has not and cannot show that Kuniansky's strategic decision

not to call the handwriting expert or the delivery driver(s) was unreasonable, or that such a decision

prejudiced him.  *See Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an

ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the

witness, demonstrate that the witness was available to testify and would have done so, set out the

---

[6] An evidentiary hearing on a § 2255 Motion to Vacate, Set Aside or Correct Sentence should be held "unless the motion and the files and records of the case show that the prisoner is entitled to no relief."  § 2255(a).  In *United States v. Smith*, 915 F.2d 959, 964, the Fifth Circuit explained that

> whether an evidentiary hearing is necessary to resolve charges of ineffective assistance depends on an assessment of the record. *Byrne v. Butler,* 845 F.2d 501, 512 (5th Cir.1988). If the district court cannot resolve the allegations without examining evidence beyond the record, it must hold a hearing. *Id.* (citing *Clark v. Blackburn,* 619 F.2d 431, 432 (5th Cir.1980)). If the record is clearly adequate to dispose fairly of the allegations, the court need inquire no further. *Id.* (citations omitted). A hearing is also unnecessary when the petitioner's allegations are "inconsistent with his conduct" and when he does not offer "detailed and specific facts" surrounding his allegations. *See Davis,* 825 F.2d at 894.

Here, because Tyler's ineffectiveness claims can be resolved on the record, and there is no conflicting evidence on the strategic decisions of trial counsel, an evidentiary hearing is not needed or warranted.

contents of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."); *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) (To demonstrate error, or ineffective assistance of counsel, the petitioner must prove that a witness's testimony would have helped him, and that the witness would have testified to certain facts or information at trial). As for Kuniamsky's decision not to call John Moody as a witness solely for the purpose of impeaching him, Tyler has not shown that that decision was unreasonable, or that the Court would have allowed counsel to call Moody as a witness in any event.

Having considered all of Tyler's complaints of ineffectiveness in the context of the record evidence, the Magistrate Judge concludes that Tyler has not alleged with any facts, or shown with any evidence, that trial counsel's performance was unreasonable, or that trial counsel's performance prejudiced him. With every claim Tyler has raised and every motion he has filed, Tyler attempts to convince the Court that he is not, and should have been found, guilty, that he was unaware of the fraudulent Medicaid/Medicaid claims, that he had no intent to defraud Medicare/Medicaid, and that there was either no loss, or no intended loss, attributable to his conduct. The fact that the jury did not believe Tyler and his defense has not been shown to be attributable to trial counsel. In addition, the sentence Tyler received has not been shown to be attributable to trial counsel. His ineffective assistance of trial counsel claims are therefore all subject to dismissal.

2.     **Appellate Counsel**

Tyler complains about appellate counsel's failure to communicate with him during the appeal and failure to advance the claims and arguments he thought merited review on appeal. Appellate counsel, Yolanda Jarmon, responded to Tyler's complaints of ineffectiveness in an affidavit she filed (sealed Document No. 39). While Tyler disputes in his own affidavit that Jarmon consulted with

him, and states that she never gave him the opportunity to review the appellate brief before it was filed, and did not include any of his suggested issues for appeal, those statements in Tyler's affidavit do not support an ineffective assistance of appellate counsel claim.   That is because Tyler has not shown that Jarmon failed to raise issues and claims that were clearly stronger than the insufficient evidence claim that was raised.   In addition, nothing in Tyler's affidavit would support a determination that the result of Tyler's appeal would have been different if any additional issues had been raised by appellate counsel.   As such, there is no evidence to support either the deficiency or prejudice prongs of *Strickland*, and Tyler's ineffective assistance of appellate counsel claims are subject to dismissal as well.

## IV.   Conclusion and Recommendation

Based on the foregoing, and the conclusion that Tyler is entitled to no relief on any of his claims or any of his post-conviction motions, the Magistrate Judge

RECOMMENDS that Tyler's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 340) and related Motions for Declaratory Judgment (Document Nos. 341, 342 and 346) DENIED, and that his Motion Nunc Pro Tunc (Document No. 349) and Motion to Reduce Sentence (Document No. 350) also both be DENIED.   The Magistrate Judge further

RECOMMENDS that Tyler's Request for an Evidentiary Hearing (Document No. 384 in Criminal Action No. H-12-774; Document No. 49 in Civil Action No. H-16-2013) be DENIED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.   Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order

80-5, S.D. Texas.  Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc).  Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, this ___25th___ day of July, 2018.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE

25